## Loomis J. Smith vs. Patrick J. Cosgrove.

October Term, 1898.

Present: Ross, C. J., Rowell, Tyler, Munson, Start and Thompson, JJ.

Opinion filed January 28, 1899.

*Construction of Burlington City Charter—Vacancy—Term of Office—*
Under the charter of the city of Burlington, Acts 1896, No. 140, when a
vacancy occurs in the office of chief of police, the vacancy is in the office,
not merely in the term of service, and the new appointee is in for a whole
term, not alone for the unexpired term of the old officer.

Petition to the supreme court for the county of
Chittenden for a writ of *quo warranto*. Heard on complaint,
answer and evidence at the October term, 1898.

*H. S. Peck* for the complainant.

*V. A. Bullard* and *Dillingham, Huse & Howland* for the
defendant.

At the time of the passage of the charter of 1896,
provision was make whereby all city officials should fill
out their respective terms of office, as will be seen by
examination of § 277 of the charter of 1896, a part of
which is as follows: "And the mayor and aldermen of said
city and all city officials holding office therein under and by
virtue of the general laws of this State, or the acts or part
of acts hereby amended and repealed, shall hold office till
the expiration of their current terms of office, unless such
office shall sooner become vacant under the provisions of
the general laws of this State, or the provisions of such
acts so amended and repealed." Therefore Mr. Dumas was
not only entitled to hold his office by virtue of his appoint-
ment from Mayor Van Patten until April 25, 1898, but also
by reason of a provision in the present charter to that
effect. Under the circumstances, therefore, there was no

necessity for providing in the present charter for the beginning of the chief of police term. It had been fixed by the act 172 and adopted by the charter of 1896 by the provision therein that the chief of police should continue in office until the expiration of this term. Under the law, there could be no appointment until the expiration of Mr. Dumas's term and then it was the duty of the mayor to make an appointment at such a time and in such a way as would prevent a vacancy in this office, which he must do on the 25th day of April, 1898.

The office of chief of police, therefore, under act 172 and under the present charter, is one for a term of definite duration, with a fixed time for beginning and ending. Under these circumstances, it has been uniformly held that an appointment to fill a vacancy must be for that part of the term unexpired and for no longer time. *People* v. *Green*, 2 Wend. (N. Y.) 266; *Attorney General* v. *Brunst*, 3 Wis. 787; *People* v. *Townsend*, 102 N. Y. 430: S. C. 40 Hun. (N. Y.) 360; *People* v. *Burbank*, 12 Cal. 378; *Sansbury* v. *Middleton*, 11 Md. 296; *Crowell* v. *Lambert*, 9 Minn. 283; *People* v. *Coutant*, 11 Wend. (N. Y.) 132 id. 511; *Keys* v. *Mason*, 3 Sneed (Tenn.) 6; *Banton* v. *Wilson*, 4 Tex. 400; *Meredith's Case*, 33 Gratt (Va.) 119; *Marshall* v. *Harwood*, 5 Md. 423; *Whipper* v. *Reed*, 9 S. C. 5.

Then, by act 172 and by the charter of 1896, "The mayor shall fill all vacancies during the year" in the terms of policemen by appointment from the list of applicants whose names shall have been certified to him by the board of police examiners and, of course, in that of the office of chief of police, from the same source from which the appointment was made. Char. 1896, § 218.

Any other construction than the one contended for by the defendant in this case would be contrary to the spirit and policy of our laws and institutions; for it is not in accordance with our policy of government to so intrench the office-holder in his office as to make it almost impossible

to dislodge him however obnoxious he may become to those he is supposed to serve. But the far better construction to adopt if possible, we insist, is the one that will protect the official against the caprices of a fickle master and at the same time shield the public from a protracted use of arbitrary power. The only way by which these two things can be accomplished, that is, the protection of the office-holder and the community at the same time, is to make the time apply to the term of office and not to the official, and also by making the term of office comparatively a short one with a definite time for the beginning and ending.

So much favor has been attached to the idea that short and definite terms of office are desirable, that in many well-considered cases it has been held that even in the absence of any constitutional or statutory provisions fixing the term, a person appointed to fill a vacancy holds only to the expiration of his predecessor's term. Throop Public Officers, Book 3, § 320; *Hughes* v. *Buckingham*, 13 Miss. 632; *People* v. *Breen*, 53 N. Y. Super. Ct. 167.

The office of chief of police for the city of Burlington is one of great importance. While it is created for the protection of the citizens and residents of the city, yet it may be used for their oppression and injury. If the construction contended for by the complainant is the correct one, however obnoxious the person holding the office of chief of police may be, and however great may be the desire on the part of the community to be rid of him, still, it would be quite impossible to prevent his holding the office for at least six years instead of three as obviously intended by the charter, if he is on friendly terms with the mayor, as he must be to have been appointed to the office in the first instance. For after the official who has appointed the chief of police sought to be rid of, has been defeated at the polls because, perchance, of the misconduct and non-acceptability of the person he has appointed and who is holding the office of chief of police, yet, before yielding up

his office as mayor, he might, in the morning accept the resignation of his chief of police and in the afternoon, by reason of the vacancy thus created, appoint this same person for another three years' term.

START, J.   The complainant was appointed chief of police for the city of Burlington, on the 16th day of March, 1898, and he contends that his term of office is for three years from the date of his appointment.   The respondent claims, that Jerome Dumas was, on the 25th day of April, 1895, appointed chief of police; that his term of office was for three years from that date; that he held the office until his death, Feb. 4, 1898; that the complainant's appointment was, under the charter, for the unexpired term of Jerome Dumas's appointment; that the term for which the complainant was appointed expired on the 25th day of April, 1898; that on that day he, the respondent, was appointed chief of police for three years; and that he holds the office of right, under his appointment and the city charter.

Under the charter, as amended by No. 172 of the Acts of 1894, it was the duty of the mayor, on the 25th day of April, 1895, to appoint a chief of police for the term of three years from the 25th day of April, 1895.   By No. 148 of the Acts of 1896, the charter and all acts relating thereto were amended so as to read as is prescribed therein, and the rights of the parties must be determined from an inspection of this act, as nothing contained in the prior enactments not incorporated into this act was in force at the time the parties received their respective appointments.   Section 278 of the last enactment provides, that the provisions of the act, so far as they are the same as those of acts thereby amended, shall be construed as a continuation of such acts and not as new enactments; but this does not continue in force any prior enactments that are not the same as the later enactment.   Therefore, the earlier acts that are not the same as the act of 1896 are repealed, and we must look to, and be governed by, the act of 1896 in determining the term

of office of the chief of police, whether appointed to fill a vacancy caused by death, removal, resignation, or to take the place of a chief of police whose term has expired. *Barnet* v. *Woodbury*, 40 Vt. 266; Endlich on the Interpretation of Statutes, § 196. Section 215 of the charter, as amended by the act of 1896, provides for a regular police force for the city consisting of a chief of police, who shall be appointed by the mayor and shall hold his office for three years, unless sooner removed, and such number of other police officers as the mayor shall deem necessary for the welfare of the city, who shall hold office for such term, not exceeding three years nor less than one year, as shall be designated by the mayor in his appointment. By this section, it is clear, that, whenever a chief of police is first appointed, under the charter, he holds his office for three years from the date of his appointment, unless sooner removed; and we look in vain for any authority in the charter, as made to read by the act of 1896, for appointing a chief of police for a shorter period. Section 277 of the act provides, in part, that the city officials holding office therein under and by virtue of the general law of the State, or the acts or parts of acts thereby amended or repealed, shall hold office till the expiration of their current terms, unless such office shall sooner become vacant under the provisions of the general law of the State, or the provisions of such acts so amended or repealed; but this in no way affects the term of office of a chief of police appointed thereafter, under the charter, as we have seen that § 215 fixes the term of his office. When it becomes necessary to appoint a chief of police under the new charter by reason of death, removal, resignation, or to fill the place of one whose term has expired, the appointee holds his office for three years from the date of his appointment, unless sooner removed. The language of this section is plain and unmistakable, and there is nothing in the charter relating to the filling of a vacancy in the office of chief, or appointment

to that office, that in any way limits or qualifies its provisions. The charter, as amended by the act of 1896, does not fix the time when the term of office of chief of police shall commence. It only provides for his appointment, and that he shall hold the office for three years, unless sooner removed. In the absence of any provision of the charter fixing the time when his term shall commence, it must be held that his term begins when he is appointed and qualified and continues for three years, unless he be sooner removed. When a statute creates an office and provides that it shall be filled by election or appointment for a term of years, and is silent in regard to when the term shall commence, and makes no special provision for filling a vacancy in the office, or respecting the term for which one appointed to fill a vacancy shall hold the office, and there are no general provisions of the statute that are applicable, there are no grounds for inferring an exception in case of a person elected or appointed to the office when it has become vacant by reason of the death, resignation or removal of his predecessor.

In *People* v. *Green*, 2 Wend. 266, under a constitutional provision that sheriffs should be elected once in every three years and as often as vacancies should occur, it was held that the vacancy was in the office and not merely in the term of service of the person elected to fill it, and that an election on the occurring of a vacancy was for the full term of three years, and not for the unexpired term of the predecessor.

In *Crowell* v. *Lambert*, 9 Minn. 283, under a constitutional provision that a probate judge shall be elected for the term of two years, and that, in case of a vacancy, the governor shall fill the vacancy by appointment until a successor is elected and qualified, and that such successor shall be elected at the first annual election that occurs more than thirty days after the vacancy shall have occurred, it was held that the person elected on the occurring of a vacancy holds the

office for the full constitutional term of two years, and not merely for the unexpired term of his predecessor.

In *People* v. *Burbank*, 12 Cal. 378, it is held that a district judge whose election is occasioned by a vacancy in the office is, under the constitution, which fixes no day for the commencement of the term, elected for the full constitutional term. Under similar constitutional provisions, in *People* v. *Townsend*, 102 N. Y. 430, and in *Sansbury* v. *Middletown*, 11 Md. 296, the holdings are to the same effect.

If Dumas was appointed chief of police, he held the office after the new charter took effect, by virtue of that part of § 277, which provides that the city officials holding office therein under acts thereby repealed shall hold office till the expiration of their current terms of office, and not by reason of the term of office of the chief of police under the old charter being continued. The right to hold the office for the term provided by the old charter was personal to him, and his right was all there was in the way of the mayor's making an appointment for three years under the new charter. When he died, the term of the office, under the saving clause in the new charter, expired; and there was no unexpired term to be filled. When he ceased to exercise the right secured to him, there was no vacancy to be filled under the old charter, for it was no longer in force; nor was there a vacancy to be filled under the saving clause of the new charter, for that provided only for the term of office for such officials as were in office when the new charter took effect. It did not provide for the term of office of the chief of police thereafter appointed. The term of his office is controlled by § 215 of the new charter, and at the time Dumas died, no appointment had been made under it. While Dumas held the office under the saving clause of § 277 of the new charter the right to appoint a chief of police under the provision of the new charter was suspended. When he died, the obstacle to an appointment was removed, and the new charter, in so far as it related to the appointment of a chief of police,

for the first time became operative; and thereupon the complainant was, under the new charter, appointed chief of police. There is nothing in the charter that makes the term for which he is appointed any less than it would have been if there had been no chief of police in office when the new charter took effect.

If Dumas was not appointed chief of police, when the new charter became operative, there was no chief of police, and the mayor could, at any time after the act was in force, appoint a chief of police, who would hold his office for three years from the time he was appointed. The complainant was the first appointee under the new charter and his term of office is for three years from the time he was appointed. He is, therefore, entitled to hold the office until the expiration of that term, unless sooner removed under the provisions of the charter.

> *Complaint sustained, writ awarded, and judgment that the complainant is entitled to said office, and that the defendant do not in any manner intermeddle therewith nor concern himself in nor about the same, but that he be absolutely forejudged and excluded from exercising any of the functions thereof, and that he do pay the costs of this proceeding.*

*Ross*, C. J., dissents.